IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**OMAR KHAYYAM HUMPHREY**                                            **PLAINTIFF**

v.                                  CIVIL ACTION NO. 1:19-cv-362-HSO-RHWR

**PELICIA HALL**, *et al.*                                           **DEFENDANTS**

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BEFORE THE COURT are Plaintiff Omar Khayyam Humphrey's [55] Motion for Summary Judgment and Defendants Pelicia Hall, Joe Errington, Joshua Csaszar, Regina Reed, Penny Bufkin, James Cooksey, Joseph Cooley, Sheneice Hartfield-Evans, Roylandia McBride, Andrew Mills, Andrian Keys, and Richard Penningtons' [62] Motion for Summary Judgment. Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Defendants' [62] Motion for Summary Judgment be granted, Plaintiff's [55] Motion for Summary Judgment be denied, and Plaintiff's Complaint be dismissed with prejudice.

### I. BACKGROUND

On June 26, 2019, Plaintiff Omar Khayyam Humphrey ("Plaintiff" or "Humphrey"), a postconviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), filed the Complaint [1] in this case asserting claims under 42 U.S.C. § 1983 arising out of his incarceration at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Humphrey named as Defendants twelve individuals who either provided medical care or worked for MDOC. *See id.* at

1

1-3, 14-15. The medical defendants were dismissed on August 20, 2021. Order [42] at 8. The remaining Defendants are MDOC's former commissioner and numerous correctional officers. The Complaint [1] alleges that

> Defendants are violating the 8th and 14th Amendments to the U.S. Constitutions [sic] by failing to provide conditions of confinement that offer prisoners reasonable safety and protection from harm/violence. The policies and practices at SMCI subject members of the SMCI class to a substantial risk of serious harm and injury. And unsafe living conditions. [sic] And the (PLRA). [sic]

*Id.* at 3.

Humphrey's Complaint raises three distinct claims: (1) Defendant Hall acted deliberately indifferent to his safety by failing to adequately staff SMCI, (2) certain Defendants violated his Eighth Amendment rights by failing to offer him safety and protection from repeated gang violence at SMCI, and these alleged violations have led to sleep issues, anxiety and trauma, and (3) certain Defendants violated his Eighth Amendment rights by acting deliberately indifferent towards MDOC policies and procedures.

Prior to filing suit, Humphrey filed numerous grievances through the Administrative Remedies Program ("ARP") regarding his claims. He filed at least six grievances which he marked as "sensitive issues" and "emergency." *See* Mot. for Summ. J. [62-4] at 1-35. Humphrey also filed two grievances through the regular ARP process. *Id.*

On March 22, 2021, Humphrey filed a [55] Motion for Summary Judgment. Humphrey's Motion asks the Court to take "judicial notice" that SMCI is understaffed and overcrowded. Mot. for Summ. J. [55] at 2. Defendants maintain that Humphrey

failed to establish an understaffing claim because he has not pled or proven that MDOC has a policy of deliberate indifference to understaffing and that it resulted in an injury to him. Def.s' Mem. in Supp. [63] at 24-25.

On June 4, 2021, Defendants filed a [62] Motion for Summary Judgment alleging that (1) Defendants are entitled to sovereign and qualified immunities, and (2) Humphrey failed to exhaust his available administrative remedies prior to filing suit. *See* Def.s' Mem. in Supp. 5-24. In response Plaintiff argues that he did not fail to exhaust his available administrative remedies and that sufficient evidence exists to support his deliberate indifference claims. *See* Pl.'s Resp. [67] at 2-11.

## II. **DISCUSSION**

A. Standard of Review

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

B. Plaintiff Failed to Exhaust Available Administrative Remedies Prior to Filing Suit

The Prison Litigation Reform Act ("PLRA") requires prisoners "confined in any jail, prison, or other correction facility" to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the

4

> grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

A prisoner cannot satisfy the PLRA's exhaustion requirements by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84; *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. 2008) (under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").

Mississippi Code Annotated § 47-5-801 grants the MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this authority, the MDOC created an ARP through which an inmate may seek formal review of a complaint relating to any aspect of his incarceration. *See* Mississippi Department of Correction Handbook[1] at Ch. VIII. The ARP is a two-step process. An

---

[1] See http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited October 26, 2021).

inmate is required to submit his initial grievance or request, in writing, through the Inmate Legal Assistance Program ("ILAP") within thirty days of an alleged incident. MDOC's ARP provides that where defects in the original grievance are minor ("technical" or "matters of form"), an inmate may submit a corrected grievance within five days of the rejection. If, after screening, the grievance or request is accepted into the ARP, an official will issue a First Step Response. If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by using ARP form ARP-2. The Superintendent, Warden, or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

A prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford*, 548 U.S. at 85. Rejection of a grievance during the screening phase terminates the grievance and does not count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-cv-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-cv-59-KS-MTP, 2016 WL 616385 (S.D. Miss. 2016) (finding rejection during initial MDOC screening process did not constitute exhaustion); *Goldmon v. Epps*, No. 4:14-cv-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. 2015) (same); *see also Robinson v. Wheeler*, 338 F. App'x. 437 (5th Cir. 2009) (upholding Louisiana initial screening provision of prison grievance process).

Plaintiff has filed numerous grievances with the ARP program related to his claims. *See* Mot. for Summ. J. [62] at Ex. D and E. Plaintiff filed at least six grievances which he marked as "sensitive issues" and "emergency" ARP's. *See* Mot. for Summ. J. [62-4] at 1-35. Each of these grievances were rejected by the ARP Director, following a determination that they did not qualify as emergency grievances. *Id.* at 6, 11, 15, 28, 31, and 33. The rejection letters informed Plaintiff that he has "five (5) days from the receipt of this response to submit [his] issue to the ARP department at [his] housing facility, for consideration, as a non-emergency issue." *Id.* However, Plaintiff never re-filed his grievances through the appropriate channels. As the Supreme Court has made clear the PLRA's requirement that an inmate exhaust "such administrative remedies as are available" applies even when the grievance procedure cannot provide the specific relief requested. *Booth v. Churner*, 531 U.S. 731, 732 (2001). Therefore, it is clear based on the record that Plaintiff failed to exhaust his demonstrative remedies as to these "sensitive issues" and "emergency" grievances prior to filing suit.

Plaintiff also filed two grievances through the regular ARP process. The first grievance, SMCI-19-0604, was rejected by the ARP Director for requesting relief beyond the power of the ARP to grant. Mot. for Summ. J. [62-5] at 1. Rejection at the initial screening phase, does not count as exhaustion of the grievance process. *See Seales,* 2016 WL 616385 (S.D. Miss. 2016). Plaintiff's second grievance, SMCI-19-0708, was accepted in the ARP. *Id.* at 7. However, this grievance was still awaiting a first step response at the time Plaintiff filed this suit. *Id.* at 15. Therefore, Plaintiff

7

failed to exhaust his administrative remedies with regards to ARP, SMCI-19-0708, prior to filing suit.

In conclusion, the undersigned finds that Plaintiff failed to properly exhaust his available administrative remedies as to any of his claims prior to filing this suit. Plaintiff failed to properly exhaust his six "emergency" grievances because he failed to refile them within five days as required by MDOC policy after receiving notice they were rejected. Plaintiff failed to properly exhaust, SMCI-19-0604, because it was rejected at the initial screening phase for requesting relief beyond the power of the ARP to grant, and he did not refile. Additionally, while SMCI-19-0708, was accepted into the ARP, Plaintiff did not complete the administrative remedy process in regard to that grievance prior to filing this suit.

C. <u>MDOC and the Individual Defendants, in their Official Capacities, are Entitled to Sovereign Immunity</u>

The principle of sovereign immunity reflected in the Eleventh Amendment precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. amend. XI; *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Congress has not abrogated state sovereign immunity under 42 U.S.C. § 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 339-40 (1979); *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)). The State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

Sovereign immunity extends to any state agency or department deemed to be an "arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326-27 (5th Cir. 2002); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (the Eleventh Amendment bars a federal court suit naming "the State or one of its agencies or departments as the defendant"). It is well established that MDOC is an arm of the State of Mississippi and cloaked with the State's Eleventh Amendment immunity from suit. *See Williams v. Miss. Dept. of Corr.*, No. 3:12-cv-259-FKB, 2012 WL 2052101, at *1-2 (S.D. Miss. 2012) ("MDOC is considered an arm of the State of Mississippi" and is immune under the Eleventh Amendment); *Dandridge v. Miss.*, No. 2:08-cv-229-KS-MTP, 2009 WL 4940105, at *7 (S.D. Miss. 2009) (same).

MDOC's officers and employees, in their official capacities, are also cloaked with the State's Eleventh Amendment immunity from suit. *See Am. Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("a suit against a state official in his or her official capacity ... is no different from a suit against the State itself.") Therefore, Defendants are entitled to summary judgment on Humphrey's claims against them for damages in their official capacities.

The United States Supreme Court has recognized a narrow exception to Eleventh Amendment immunity which allows suits for prospective injunctive relief against state officials sued in their official capacities. *See McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). A state official can be sued in his or her official capacity for injunctive relief under § 1983

9

because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985) (citing *Ex parte Young*, 209 U.S. at 159–160). One of the requirements for the applicability of *Ex Parte Young*, however, is that a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so. *See Green v. Mansour*, 474 U.S. 64, 71–73 (1985).

Plaintiff has failed to establish that Defendants committed any violations of federal law. Because Plaintiff has failed to establish that Defendants had violated federal law, he cannot establish that they are committing ongoing violations of federal law. In conclusion, the undersigned finds that Defendants are entitled to sovereign immunity on Plaintiff's claims against them in their official capacities, the *Ex Parte Young* exception does not apply, and the claims against Defendants in their official capacitates should be dismissed with prejudice.

D. <u>Defendants, in their Official Capacities, are not persons that can be sued under § 1983</u>

Even if Plaintiff's claims were not barred by Eleventh Amendment immunity, Plaintiff's claims are improper as Defendants, in their official capacities, are not parties that can be sued under 42 U.S.C. § 1983. The United States Supreme Court has succinctly held that the State, arms of the State, and state officials sued in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). This holding likewise applies to "any governmental entities that are considered 'arms of the State' for Eleventh

10

Amendment purposes." *Id.* at 70. Thus, as a matter of statutory interpretation, Defendants are not amenable to suit under § 1983 in federal court.

E. Defendants are Entitled to Qualified Immunity

42 U.S.C. § 1983 prohibits the deprivation of an individual's constitutional rights under color of state law and provides for both monetary and injunctive relief. However, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law," and "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official is entitled to immunity from suit unless (1) a plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Pearson,* 555 U.S. 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). These two prongs need not be addressed in a particular order, and failure to satisfy either may be dispositive. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 236).

a. <u>Plaintiff has failed to establish an understaffing claim</u>

Plaintiff alleges that Defendant Hall violated his Eighth Amendment rights by failing to adequately staff SMCI. *See* Compl. [1] at 7, 16. The only evidence Plaintiff provides to support this claim is his handwritten rendition of MDOC's policies and operating procedures. *Id.* at 16-22.

In order to prevail on an understaffing claim, the Plaintiff must establish that there was a policy at the jail, promulgated or implemented by the policy-making official, of deliberate indifference to the risk of under-staffing and that this policy caused his injury. *Payton v. CEO, Corr. Corp. of Am.*, No. 14-cv-959-JTT-JDK, 2015 WL 52104, at *3 (W.D. La. 2015). Evidence of understaffing, without more, is not proof of official policy. *Id; see also Hood v. Itawamba,* 816 F. Supp. 556, 566 (N.D. Miss. 1993). Evidence of understaffing would become proof of an official policy only if more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the prison. *Gagne v. City of Galveston,* 671 F. Supp. 1130, 1135 (S.D.Tex.1987), *aff'd*, 851 F.2d 359 (5th Cir. 1988).

Plaintiff's general and conclusory allegations of understaffing are insufficient to support a Section 1983 claim. *Id.* at 1135; *see* Compl. [1] at 7. Further, Plaintiff's own testimony belies a finding that an official policy of understaffing exists. At the omnibus hearing, Plaintiff testified that he believes Defendant Hall simply does not have the funding or resources to staff SMCI at the level he believes adequate. *See*

Mot. for Summ. J. [62-1] at 11-12. Plaintiff's belief does not amount to proof of an official policy, and Plaintiff's understaffing claims should be dismissed with prejudice.

### b. <u>Plaintiff has failed to establish a failure to protect claim</u>

Plaintiff alleges that Defendants Bufkin, Cooksey, Csaszar, Errington, and Reed violated his Eighth Amendment rights by failing to offer him safety and protection from repeated gang violence at SMCI. *See* Compl. [1] at 23-27. Plaintiff further alleges that Defendants' deliberately indifferent conduct has led to sleep issues, anxiety, and trauma. *Id.* at 5. Plaintiff has not identified specific threats made to him by specific individuals, only generalized danger posed by proximity to gang members and gang activity.

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). However, not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

In order to prevail on a claim that prison officials failed to protect an inmate from harm, the Plaintiff must establish (1) "that he [was] incarcerated under conditions posing a substantial risk of serious harm" and (2) that the jail official's state of mind towards inmate's health or safety was one of "deliberate indifference." *Farmer,* 511 U.S. at 834. Proving deliberate indifference requires showing that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff cannot meet the first prong for establishing deliberate indifference; namely, that he was subjected to a substantial risk of serious harm. Plaintiff alleges that his life is in danger but substantiates this assertion with only allegations that he is not gang-affiliated and is housed in a unit with gang members. *See* Compl. [1] at 23-27. Although Plaintiff need not suffer actual injury in order to be entitled to prospective, injunctive relief, he has not demonstrated that he is subjected to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 845. Plaintiff has not identified any specific threats made to him by any specific individuals, only a generalized danger posed by proximity to gang members and gang activity. Plaintiff has offered no proof that he is incarcerated under conditions posing a substantial risk of serious harm.

Gangs are an unfortunate but unavoidable presence in prison life. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1518 (2012)*; Lewis v. Richards*, 107 F.3d 549, 557 (7th Cir. 1997) (Flaum, J., concurring); *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-cv-663, 2015 WL 3795020, at *13 (S.D. Miss. 2015), *appeal dismissed sub nom. Depriest v. Fisher*, No. 15-60488, 2016 WL 5400415 (5th Cir. 2016). In order to address safety concerns, such as those posed by gangs, "[p]rison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) (quoting *McCord v. Maggio*,

910 F.2d 1248, 1251 (5th Cir. 1990)). Indeed, "it is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *Id.* (quoting *McCord*, 910 F.2d, at 1250). Plaintiff alleges that the prison has a practice of housing gang-affiliated inmates and unaffiliated inmates in the same unit, and that this alleged practice subjects Plaintiff to a substantial risk of harm. However, Plaintiff has offered no evidence to support these allegations.

Plaintiff also alleges mental harm, including the inability to sleep, anxiety, and trauma, due to the allegedly ongoing gang activity, but the PLRA bars "claims for mental or emotion injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). At his omnibus hearing, Plaintiff admitted that he has suffered no physical harm. *See* Mot. for Summ. J. [62-1] at 40-48. Plaintiff's failure to protect claims should be dismissed with prejudice.

    c. <u>Defendants alleged failures to follow MDOC policies and procedures do not constitute a violation of federal law or a Constitutional right.</u>

Finally, Plaintiff alleges that Defendants Hall, Hartfield-Evans, Keys, McBride, Mills, and Pennington violated his Eighth Amendment rights by not following MDOC policies and procedures. *See* Compl. [1] at 16, 27, 33, 36, 37, 39, 42. Even if the Court assumes that it is true that Defendants did not follow MDOC policy and procedure, such does not rise to the level of a constitutional violation. As the Fifth Circuit has long held, "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process." *Thompson v. Epps*, No.

3:12-cv-369-LRA, 2014 WL 2932284 at *5 (S.D. Miss. 2014) (citing *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

For these reasons, the undersigned finds that Defendants are entitled to qualified immunity. Plaintiff has failed to establish the violation of a constitutional right as to any of his claims. Plaintiff has failed to establish an understaffing claim. Plaintiff has failed to establish a failure to protect claim. Finally, Defendants alleged failure to follow MDOC policy, does not constitute a violation of federal law or a constitutional right. Therefore, the undersigned recommends that Plaintiff's claims be dismissed with prejudice.

### III. **RECOMMENDATION**

The undersigned United States Magistrate Judge recommends that Defendant's [62] Motion for Summary Judgment be granted, and Plaintiff's Complaint be dismissed with prejudice. The undersigned further recommends that Plaintiff's [55] Motion for Summary Judgment be denied.

### IV. **NOTICE OF THE RIGHT TO OBJECT**

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 1st day of November, 2021.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE